UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD FORDHAM,

                              Petitioner,                    Case No. 2:17-cv-10430
                                                                           Hon. Victoria A. Roberts

v.

BONITA J. HOFFNER,
                              Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Ronald Fordham was convicted after a jury trial in the Wayne Circuit Court of second-degree murder. MICH. COMP. LAWS § 750.317. Petitioner was sentenced to a term of 27 to 50 years' imprisonment.

The petition raises seven claims: (1) insufficient evidence at trial to sustain Petitioner's conviction, (2) Petitioner's trial counsel was ineffective for failing to object to the misconduct of the prosecutor, (3) the prosecutor improperly vouched for the credibility of two witnesses, (4) Petitioner's trial counsel was ineffective for failing to present a substantial defense, failing to request a jury instruction on manslaughter, and failing to have Petitioner testify in his own defense, (5) the trial court erred in failing to instruct the jury on its own initiative on the lesser offense of manslaughter, (6) trial counsel was ineffective for failing to subject the prosecutor's case to meaningful adversarial testing, and (7) trial counsel was ineffective for failing to advise Petitioner to accept a favorable plea bargain.

The Court finds that Petitioner's claims are without merit or barred by his state court procedural default. Therefore, the petition will be denied. The Court also denies a certificate of

appealability, but it will grant permission to appeal in forma pauperis.

## I. Background

Petitioner was originally charged with first-degree murder along with co-defendants Shameka Shamily and Tinga Harvey as a result of the May 3, 2012, stabbing death of Kiewone Watkins at a Detroit apartment building. Harvey and Shamily pled guilty to manslaughter, and before trial the charge against Petitioner was reduced to second-degree murder.

At trial, the medical examiner testified that Watkins died as the result of multiple stab wounds. The most serious wounds penetrated the right chest cavity and injured both of his lungs and heart. The medical examiner noted a defensive stab wound on the victim's forearm and a laceration to the back of the head.

The incident occurred after a fight erupted at Watkins' apartment building. The two-story "U" shaped building had an outdoor walkway on the second floor and outdoor staircases. The fight initially involved Shamily and Harvey arguing with Shamily's step-sister, Shana Granger. Harvey is the mother of Petitioner's child, and Granger was Watkins' boyfriend. Granger and Watkins lived at the same building but in different apartments.

Shamily testified at trial that she and Harvey went to the apartment building after drinking heavily. Multiple intoxicated people were arguing. Shamily and Harvey got involved in the argument; they argued with Watkins. At some point Shamily and Harvey left the building, got Petitioner, and returned with the intention of continuing the fight.

When they returned, Shamily and Harvey engaged in a physical fight with the victim on the second-floor walkway. During the fight, Shamily saw Petitioner hit the victim in the chest and stomach, but she did not see a knife. Petitioner then started running away and told Shamily and Harvey that they had to go. Meanwhile, Shamily saw the victim lying on the ground. Shamily

2

testified that she was charged with second-degree murder, but she pled guilty to manslaughter with a 4 to 15 year sentence and an agreement to testify truthfully at trial.

Harvey testified that she is the mother of Petitioner's daughter. She was also charged with second-degree murder but pled guilty to manslaughter with a 4 to 15 year sentence and an agreement to testify truthfully. She described how on the date of the incident, Granger called Harvey and Shamily over to her building. When they arrived, Harvey argued with Watkins, who pushed her and threatened to punch her. In response, Harvey broke a bottle and prepared to use it as a weapon. Watkins spit on her. When other individuals came out of Watkins' apartment, Harvey and Shamily left to get Petitioner.

Harvey testified that they returned with Petitioner, another man named Ralph, Paris Simpkins, and her boyfriend. Harvey and Shamily went back to Watkins' apartment, and the three began to fight on the walkway. During the fight, Petitioner intervened and stabbed the victim several times. The victim fell to the floor. As they fled, Petitioner told Harvey that he stabbed the victim but that he did not kill him.

Shana Granger testified that Harvey and Shamily arrived at her apartment building sometime after midnight on the date of the incident. The women started to argue with each other, leading Watkins to argue with Harvey and Shamily. The two women left, but they returned with Petitioner who accused the victim of spitting on Harvey. Harvey and Shamily then started fighting with Watkins, and during the fight Granger thought she saw Petitioner strike the victim in the chest with his fist. The victim fell to the ground. Petitioner, Shamily, and Harvey then ran from the scene. Granger never saw a knife.

Paris Simpkins testified she was also at the scene during the fight. She saw Shamily and Harvey fighting with the victim. She then saw Petitioner punch the victim in the stomach and pull

him to the ground. Her boyfriend also kicked the victim. Petitioner then yelled at the women that they had to go, and they all left the building. She never saw anyone with a weapon.

When Detroit Police Officers arrived at the scene aroud 2:45 a.m., they found the victim in a pool of blood on the second-floor walkway near the stairwell. The area was well-lit by street lights and a light on the building. He had no vital signs. Police found Granger hiding in a closet in her apartment. She was visibly shaken, but she was able to provide the names of three suspects.

Detroit Police Homicide Detective Johnell White testified that he obtained several statements, including statements from Petitioner, Granger, Harvey, and Shamily. The statements were recorded on video, and Petitioner's statement was played for the jury. Petitioner denied in his statement that he was present at the scene of the fight.

The jury found Petitioner guilty of second-degree murder.

After sentencing, Petitioner filed an application for delayed appeal in the Michigan Court of Appeals, raising what now form his first two habeas claims. The Michigan Court of Appeals denied Fordham's delayed application "for lack of merit in the grounds presented." *People v. Fordham*, No. 317522 (Mich. Ct. App. Jan. 21, 2014).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he raised in the Michigan Court of Appeals, as well as additional claims of prosecutorial misconduct, erroneous jury instructions, and additional allegations of ineffective assistance of trial counsel. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Fordham*, 849 N.W.2d 355 (Mich. 2014) (Table).

In September 2014, Petitioner filed his first habeas petition with this Court, raising all the claims he presented to the Michigan Supreme Court. The petition was dismissed without prejudice

for Petitioner to exhaust state court remedies with respect to the claims he did not present to the Michigan Court of Appeals. *Fordham v. McKee*, No. 14-cv-13713 (May 28, 2015).

Petitioner returned to the trial court and filed a motion for relief from judgment on October 9, 2015, raising all seven of the claims that he presents in his habeas petition, along with a claim this his appellate counsel was ineffective for failing to raise his third through seventh claims on direct appeal. The trial court denied the motion for relief from judgment, citing Michigan Court Rules 6.508(D)(2) and (D)(3), and because the claims lacked merit. Dkt. 8-13.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The Michigan Court of Appeals denied it because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Fordham*, No. 330299 (Mich. Ct. App. March 29, 2016). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but his application for leave to appeal was denied for failure "to meet his burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Fordham*, 888 N.W.2d 69 (Mich. 2016) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per

5

curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Sufficiency of the Evidence

Petitioner's first claim asserts that insufficient evidence was presented at trial to sustain his conviction. He asserts that insufficient evidence was presented to prove beyond a reasonable doubt that he was the person who stabbed the victim or that he aided Shamily and Harvey in stabbing the victim. He notes that other than the testimony of Harvey, no other witness testified to seeing a knife. He further asserts that another man was present who kicked the victim while he was on the ground, but that person was never identified, charged, or produced as a witness at trial. Petitioner also argues that there was no evidence offered to show that he acted with malice, and that the police never

6

recovered his shirt to have it tested for the presence of the victim's blood.

This claim was presented to the Michigan Court of Appeals on direct review, but his appeal was denied "for lack of merit in the grounds presented." Dkt. 8-10, at 1. Because this order amounted to a decision on the merits, the AEDPA deferential standard of review applies. See *Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on a sufficiency-of-the-evidence review is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id*. at 334. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 318-19.

The Court may not vacate a state-court decision rejecting a sufficiency-of-the-evidence claim merely because it disagrees with the decision. Instead, it may grant habeas relief only if the state-court decision was an objectively unreasonable application of *Jackson*. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). For the Court, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Viewed most favorably to the prosecution, the evidence presented at trial was sufficient to support Petitioner's conviction. The evidence strongly supported the finding that Petitioner was the person who stabbed and killed the victim. Multiple eyewitnesses testified that the victim fell to the

ground after they saw Petitioner punch him in the chest and stomach. Though most of the witnesses testified that they did not see a knife, the testimony of the medical examiner clearly indicated that the victim was stabbed in the chest multiple times - strongly supporting the prosecutor's theory that the punches were in fact stabs. Moreover, Harvey testified that she saw Petitioner stab the victim, and that Petitioner admitted to her that he stabbed the victim. Dkt. 8-7, at 44-47. Petitioner posits reasons why the witnesses testifying against him were not credible, but such arguments do not speak to the constitutional sufficiency of the evidence. An assessment of a witness's credibility is "beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Finally, Petitioner claims that no evidence of malice was presented at trial. But under Michigan law, malice may be inferred from the circumstances of the case. See *People v. Carines*, 460 Mich. 750, 759 (1999) ("A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. Malice may also be inferred from the use of a deadly weapon.").

The evidence indicated that the victim was stabbed multiple times in the chest. Both his lungs and his heart were punctured. From this evidence, the jury easily could have found beyond a reasonable doubt that Petitioner either intended to kill the victim or to cause him great bodily harm. See *People v Turner*, 213 Mich. App. 558, 566 (1995) (malice requires one of three mental states: (1) an intent to kill, (2) an intent to do great bodily harm, or (3) performance of an action that creates a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result). Sufficient evidence of malice was presented at trial.

Petitioner's sufficiency of the evidence claim was reasonably rejected by the Michigan Court of Appeals; the claim does not provide a basis for granting habeas relief.

B. Prosecutorial Misconduct

Petitioner's second and third claims assert that the prosecutor improperly vouched for the credibility of Shamily and Harvey by informing the jury that they pled guilty in exchange for their truthful testimony. He relatedly claims that his trial attorney's failure to object to the vouching constituted ineffective assistance of appellate counsel. Again, because these claims were summarily rejected on the merits by the Michigan Court of Appeals during Petitioner's direct appeal, the AEDPA standard applies.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses; such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted); *See also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004).

The record indicates that during the direct examination of the witnesses in question, the prosecutor elicited testimony regarding their plea agreements. Dkt. 8-6, at 46-47; Dkt. 8-7, at 8-10. Both women said they were initially charged with second-degree murder. Id. at 46 and 8. And, both

women testified that their plea agreements to manslaughter called for them to testify truthfully. Id. at 47 and 10. Though in closing argument the prosecutor referred to the fact that Shamily and Harvey pled guilty, he did not refer to their promise to testify truthfully as a reason to believe their testimony. Dkt. 8-8, at 65. Moreover, the trial court instructed the jury that it was up to them to decide whether to believe the testimony. Id. at 89, 93, 100-102.

The practice of describing witnesses' plea agreements to the jury, including an agreement to testify truthfully, is permissible. *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). Revelation of the terms of the plea agreement did not suggest secret or special knowledge held by the prosecutor concerning Petitioner's guilt. Indeed, the fact that the witnesses received a benefit from the prosecution in exchange for the their testimony provided the defense with a significant basis for attacking their credibility. The prosecutor's act of eliciting the terms of the witnesses' plea agreements did not constitute improper vouching.

Finally, because evidence of the witnesses' plea agreements was properly admitted at trial, it follows that Petitioner's trial attorney did not render ineffective assistance of counsel when he failed to object. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Accordingly, Petitioner's second and third claims are without merit.

C. Procedural Default

Petitioner's remaining claims were exhausted in the state courts in his motion for relief from judgment and the appeal that followed it. The trial court denied Petitioner's motion in an opinion that discussed the merits of his post-conviction claims, but it did so in the context of determining whether Petitioner could demonstrate "actual prejudice" resulting from his appellate counsel's failure to raise the claims on direct appeal. The trial court's order denying his motion for relief from

judgment concludes by stating:

> As indicated earlier, in order to avoid the bar against granting post judgment relief, a criminal defendant must establish good cause for failure to raise th grounds for such relief on appeal in additional to actual prejudice from the irregularities that support the claim for relief. MCR 6.508(D)(3)(b). Even assuming for purposes of Defendant's motion that Defendant has established he requisite good cause, Defendant has failed to show actual prejudice, and therefore has not met his burden of demonstrating entitlement to the requested relief.

Dkt. 18-13, at 12.

The subsequent form orders denying relief by the Michigan Court of Appeals and Michigan Supreme Court were unexplained. See *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

A federal habeas court ordinarily will not review a petitioner's claims if he "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "To determine whether the state court rejected a petitioner's claim on procedural grounds, a court looks to the last reasoned state court opinion to determine the basis for the state court's rejection of the petitioner's claim." *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012). Furthermore, the court must presume that, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Guilmette*, 624 F.3d at 291-92 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Here, the trial court denied Petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3)(b). Thus, Petitioner's post-conviction claims are procedurally defaulted. See *Shelton v. McQuiggin*, 651 F. App'x. 311, 314 (6th Cir. 2016); *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

Where, as here, a petitioner has procedurally defaulted his claims, "federal habeas review

of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner asserts that his appellate counsel was ineffective for failing to raise his post-conviction review claims during his appeal of right, and that this constitutes cause to excuse his default. Appellate counsel, however, is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Where appellate counsel "presents one argument on appeal rather than another . . . the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present'" to establish ineffective assistance of counsel. *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Appellate counsel was not ineffective during Petitioner's direct appeal because the claims Petitioner raised on post-conviction review are not "clearly stronger" than the ones raised by appellate counsel on direct review. Petitioner therefore cannot demonstrate cause to excuse his default.

Petitioner raised a number of allegations of ineffective assistance of trial counsel on state post-conviction review that he claims his appellate counsel was ineffective for failing to raise on direct review. In his fourth claim he asserts that his counsel was ineffective for failing to request a lesser-offense manslaughter jury instruction and for failing to have Petitioner testify in his own defense. Petitioner's sixth claim asserts that his counsel was ineffective for failing to subject the prosecutor's case to meaningful adversarial testing. Finally, his seventh claim asserts that his

12

counsel was ineffective for failing to advise Petitioner to accept a plea bargain. None of these claims are clearly stronger than the ones raised by Petitioner's appellate counsel on direct appeal.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Petitioner asserts that his counsel was ineffective for failing to request a lesser-offense manslaughter jury instruction. In the alternative to finding the claim barred, the trial court found that counsel was not ineffective for failing to request the instruction because going for an "all or nothing" defense falls within the range of reasonable trial strategy, especially where Petitioner's argument was that the prosecutor failed to prove its version of events beyond a reasonable doubt. See Dkt. 18-13, at 9; citing *People v. Rome*, 109 Mich. App. 702, 718 (1981). As the trial court noted, Petitioner's defense was that the prosecutor did not prove that he was the person who killed the victim. Petitioner told police he was not present at the scene. In such situations, it is reasonable for counsel to choose not to give the jury the option of convicting the defendant of a lesser offense in an effort to avoid a compromise verdict. See, e.g., *Knowles v. Larson*, 2017 U.S. Dist. LEXIS 218014, *30-31 (W.D. Mich. Nov. 8, 2017) ("[B]ecause Petitioner staunchly maintained [his innocence], counsel had a reason not to invite the jury to convict Petitioner of a crime that did not

require intent. As the court of appeals held, the decision not to ask for the lesser included instruction was strategic and patently reasonable."). This claim was not clearly stronger than the ones raised by appellate counsel on direct appeal.[1]

Petitioner next asserts that his counsel should have had him testify in his own defense. A criminal defendant has a constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). Defense counsel's role is to advise the defendant whether to testify, but the ultimate decision is for the defendant to make. *United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002). When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). Waiver of the right to testify is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. See *id*. at 551.

Here, Petitioner never alerted the trial court at any time either before or during trial that he wanted to testify. Indeed, after the prosecution rested, Petitioner indicated on the record that he wished to exercise his right to remain silent. Dkt. 8-8, at 42-43. In light of these facts, Petitioner cannot overcome the presumption that he willingly agreed to counsel's advice not to testify and that his attorney rendered effective assistance of counsel. See *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000). This claim is not clearly stronger than the ones raised by appellate counsel on direct appeal.

Next, Petitioner asserts that his counsel was ineffective for failing to subject the prosecutor's

---

[1] As for Petitioner's fifth claim, which asserts his due process rights were violated by the trial court's failure to instruct the jury on manslaughter on its own initiative, simply put, "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795–97 (6th Cir. 1990) (en banc)). Appellate counsel was not ineffective for failing to raise this meritless claim on direct review.

case to meaningful adversarial testing. Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer*, 286 F. 3d 851, 860 (6th Cir. 2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). In the present case, counsel's alleged errors did not rise to the level of a constructive denial of counsel because counsel actively represented Petitioner at trial. He effectively cross-examined the prosecutor's witnesses, made objections he thought warranted, and made an effective closing argument. The claim that counsel completely failed to defend Petitioner finds no support in the record and is not clearly stronger than the claims raised by appellate counsel on direct appeal.

Finally, Petitioner asserts that his counsel was ineffective for failing to advise Petitioner to accept a plea bargain. Petitioner supported this claim in the trial court with a thread-bare allegation in his affidavit that, "I told [defense counsel] I would be open to negotiations, but I didn't kill Watkins, but he only informed me of a potential deal mid-trial." Dkt. 8-12, Fordham Affidavit, ¶ 24.

Petitioner does not allege that the prosecutor actually offered him a plea bargain, or that he was willing to accept the plea bargain that was made. This baseless claim is not clearly stronger than those raised by appellate counsel on direct review. See, e.g., *Paez-Ortiz v. United States*, 200 F. App'x 946, 948 (11th Cir. 2006) (Any deficiency in failure of criminal defendant's counsel to advise defendant to plead guilty did not prejudice defendant absent any evidence that plea offer was actually made to defendant or that defendant ever expressed desire or intent to plead guilty).

15

Accordingly, Petitioner's state post-conviction review claims are barred from review by Petitioner's state court procedural default: he failed to present them to the state courts on direct appeal, and Petitioner's failure to demonstrate that his appellate counsel was ineffective for failing to present them in that proceeding. As all of Petitioner's claim are without merit or barred from review, the petition will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issued. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner is not entitled to habeas relief with respect to any of his claims, and so a certificate will be denied.

The Court will, however, grant permission to appeal in forma pauperis because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

S/Victoria A. Roberts
Honorable Victoria A. Roberts
United States District Judge

Dated: July 30, 2018